Good morning. May it please the Court. My name is Matt Locher and I represent the appellant, Neil Silver. Mr. Silver has appealed the District Court's March 2016 order granting Pennsylvania Higher Education Assistance Agencies motion for summary judgment. This order retroactively applied to the November 2, 2015, bipartisan Budget Act amendment, sorry, Budget Act, which amended the Telephone Consumer Protection Act. Through the course of this amendment, entities such as PHEAA no longer have to have prior express consent to utilize an automated telephone dialing system. Is there a question? Yeah, I wanted to, because you don't have a lot of time. Right. If we were to agree with you on the retroactivity question, that there's no exception to the general rule against retroactivity, there were some alternative grounds that were presented both to the district court and here for affirmance, and we're allowed to look at those alternatives. One is consent, and I understand your argument that there's at least an issue of fact there because of the do not call, do not e-mail me. But the other one has to do with whether there is actually a prerecorded voice or the use of an automatic telephone dialing system. And there's no evidence, as I see it, of any prerecorded voice. So we're down, in my thinking on this decision tree, to whether there is an automatic telephone dialing system involved. And, again, as I understand the record, there isn't, there's no proof that that's what was used. So what is your argument with respect to that alternative ground for affirmance? With regard to that particular alternative ground, Your Honor, I do think there is evidence that a prerecorded voice was either used or capable of being used. Well, that's the question. Capable is different than used, and why does that count? Correct. The capable is different of being used. But Mr. Silver did testify that he believes he received a prerecorded voice from PHEAA. In addition, in the record at 311 and 312, during the deposition of Mr. Crowbath, the 30B6 witness for PHEAA, he repeatedly testified that the Avaya dialing system does have the capacity to utilize prerecorded voices, and, in fact, it does utilize such prerecorded voices. So, in other words, what you're suggesting is there's an issue of fact there. Correct. That you have produced to this point your client saying they did use it and they had the capability of using it, and, therefore, there's an issue of fact which somebody ought to give a thought to. That's correct, Your Honor. And in addition to the record portion that I cited, which was pages 311 and 312, also at 313 there is deposition testimony from Mr. Crowbath regarding the prerecorded voices. At 316, an excerpt from the Avaya dialer's manual, which discussed the process of utilizing messages and scripts, which would lead to those prerecorded voices. Well, the whole thing is you have some basis for the fact they could, and you keep giving us more of that, but the real fact issue is presented by your client saying they did, and then they say they didn't, and then you say you got all this stuff that suggests they might and they could have, and your client says they did. And so, therefore, it makes it a fact issue. That's what your argument is, right? Yes, Your Honor. And my client's testimony is at page 142 in the excerpts of the record. With regard to whether the Avaya dialing system itself constitutes an automated telephone dialing system, at 287 in the record, there is, sorry, between 287 and 295, we look towards Avaya's website and also the manual where it's repeatedly referred to as a predictive dialer. A predictive dialer has been deemed an automated telephone dialing system on a number of occasions. Which means, in that instance, you at least have some evidence to suggest that it is what it is, and it's a question of fact whether it really is. Correct. And that question, whether it's an ATDS or utilizes a pre-recorded message, is written in a disjunctive. So if we can satisfy either one of those questions, then I believe we've created a tribal issue of fact that the jury should weigh. As far as another alternative of grounds to granting the motion for summary judgment, PHEAA brought up the Spokio question and argued that there is no Article III standing based upon a statutory violation of the TCPA. Van Patten, I think, takes care of that. Correct. I was just going to mention Van Patten and also the fact that... I was going to say, I think that's not... Right. That's the only note I had on it. And the final alternative ground for granting the motion for summary judgment was the issue of consent and revocation of that consent. With regard to the... You know, I caught the original TCPA because, in my opinion, the amended version hasn't been enacted. But revoking consent was appropriate at that time. And then based upon the FCC's August 2016 report and order, revocation is still proper. So from the record, we have multiple letters between... Multiple letters and e-mails between the 89, starting at 89 from the excerpt of the record, going through 106... Sorry, 107 from the excerpt of the record, where Mr. Silver is saying, you know, So I do believe, with regard to consent, that there's a tribal issue. Is it a tribal issue? Or is the evidence there and we can make a legal determination? I would prefer a legal determination, but I didn't want to go straight there and ask for that. You didn't want to get that. Yeah. At a minimum, there's a tribal issue. He'll come up and say tribal issue on that one. Right. At a minimum, there's a tribal issue. Okay. I just wanted to make sure I understood your argument. Thank you, Your Honor. And with regard to those alternative facts or, sorry, alternative means of granting the motion, I didn't have anything else. We try not to have alternative facts here. Right. No alternative facts here. My apologies. That may make them a tribal issue. Right. Yeah, we could try those alternative facts. That would be very confusing. I'll jump in and get it. We don't really like to have alternative, but that may make it a tribal issue. Right. Okay. So, if we get back to the other, it seems to me that what you're really saying is, okay, let's look at the three-step inquiry. There's no express statement on its reach, thus no retroactivity. There's no question the clear manifestation of congressional intent is a tough one for them to win, so no retroactivity. So we're really stuck with number two, right? Correct, Your Honor. And with regard to the second prong of the land graft analysis, the district court relied solely upon the Southwest decision, a 2002 decision from the Ninth Circuit, and where I think our case, the case currently before the panel, differs from Southwest is through an analysis of the third prong. Under the third prong in Southwest, the government interest, I believe, with regard to the Freedom of Information Act, was the sole consideration at that time that led to the Southwest decision. Here, our government interest in our third or, sorry, our interest in enacting the amendment is different. Not only do we have the government interest that the amendment is intended to facilitate collection of student loans owed to the government, we also have the consumer protection interest that's envisioned in the Telephone Consumer Protection Act. So weighing those two, in my opinion, leads to a different result that's more analogous to the cases of Scott, Two Rivers, Beavers, as well as Talahi. And that's T-A-L-A-I-E. I'm not sure if I'm pronouncing it correctly. In each of those decisions, the amendment. Don't get too worried. You've got an Idaho Yeh who's sitting here, and he can't pronounce it. Right. He's Oregonian. They're pretty good. But not I. I'm with you.  Go ahead. In each of those decisions, there were different government interests at issue in the amendment. And once the retroactivity of the amendment was applied to extinguish the plaintiff's action, that's where the Ninth Circuit found it to be an impermissible retroactive effect. And I only have 30 seconds left. I'd like to reserve the remainder for rebuttal. You may do that. Okay. Good morning, and may it please the Court. Donald Bradley, appearing by special designation of the Attorney General of the Commonwealth of Pennsylvania on behalf of the Appellee Pennsylvania Higher Education Assistance Agency, which, if it pleases the Court, I will refer to as PHEAA, the acronym P-H-E-A-A. I understand the Court was interested off the bat in the ATDS and recorded voice issue, but I would like to spend a little bit of time on the retroactivity issue. Specifically, the Landgraf test by the United States Supreme Court is the test we should look at, but it's important to analyze what the Supreme Court had in front of it when it issued the Landgraf opinion. The courts have talked about the Landgraf presumption against retroactivity, but that's really a misnomer. Landgraf had two lines of authority in front of it when it issued that decision. There was the actual presumption in favor of retroactivity announced by the Supreme Court decisions in Bradley and Thorpe and others, and there was also a presumption against retroactivity in the Supreme Court cases of Bowen and others. And what Landgraf did was reconcile those competing lines of authority, recognizing the tension between them, and came up with its own standard. And the Court has recognized that the first step there is express congressional intent. We don't have that here. Either way. Kennedy. So do you suggest that we approach this, I'm just trying to make sure that my analysis is the same as yours based on what you've now argued, that we still have a presumption against the retroactivity? No, Your Honor. The Bradley and Thorpe line of cases still gets cited. There's a Sixth Circuit case in 2006. I understand why they're cited. I guess when I was reading the Supreme Court's decision when it applied the three-step inquiry, it seemed to me that they were suggesting there was still a presumption against retroactivity and that you had to have one of these three steps in order to overcome the presumption. I don't think it should be treated as a presumption, Your Honor. It really is a test where you start from scratch, and depending on how the three steps of the test play out, you either have impermissible retroactive effects or you don't. And under the second step, if you look to whether rights were impaired when the party acted. So if you come out zero on all three, can there still be retroactivity? It can be applied retroactively, yes. Oh, but just a minute. If you can't meet any one of the three steps, can you still have retroactivity? Absolutely. That's the way the test works. For instance, the first step is, is there an express statement? There is no express statement. So if that were the only test, it would not be retroactive, right? In this case, there were only one step in this case. If there is nothing, if there is no express statement, then at that point it's silent. So therefore, if that were the only inquiry, it would not be retroactive. That's correct. In that sense, it is a presumption. In that sense, it's a presumption. Correct. And I applied that presumption in each one of the steps. So if you don't meet the step, it isn't retroactive. In that sense, yes. I guess it could be considered a presumption. All right. I just wanted to make sure we were seeing it the same way. Okay. And look at three, the clear congressional intent. Do you think there's clear congressional intent any place in this? I don't think you need to get to that step because – Well, I understand. But if, in fact, two were out of the way, if, in fact, you lost on two, do you have anything to say about three? Sure. There is congressional intent. Where? In the – Neither the title of the statute nor the statements of its supporters are adequate to conclude that Congress specifically intended. Specifically – So I guess where's the clear manifestation? The FCC has made statements. Other courts have made statements. They have – those statements have not said Congress intended this to apply. Well, what other courts say doesn't have anything to do with what Congress said. Right. But give it to me out of the statute. It seemed to me that Congress wanted to allow the government to collect the debts owed to it or secured to it by the government. And so they went to Congress and got this statute. It doesn't have anything to say about retroactivity or not. It does not. But there are cases that have dealt with statutes that involve similar government interests that have found congressional intent to apply retroactively. Because they hyped it up. I don't find it in the statute. I don't find it anyplace. I can always go find what I want to find if I want to find it, or I can just cite it and then cite some congressional idea in my mind. I'm just trying to make sure I understand your argument. Well, for example, in the Bennett case out of this Court from just this past year that wasn't cited in the briefs. We came upon it recently, 825F3, 949. Excuse me. If you're adding a citation that it's not in the briefing, would you please get after the argument a slip from the deputy clerk and submit that to opposing counsel and the Court? Absolutely. Thank you. That should be normally done in the form of a 20HA letter. I understand. And I apologize. We found it too late to submit with our 20HA letter. But in that case, this Court found that in cases of sovereign immunity, the Landgraf presumption flat out does not apply. Found an exception. And this Court in that case did not base that on expressed congressional intent regarding retroactivity. It based it on the government interest involved. And when we're dealing with sovereign immunity, those are the same kinds of interests we're dealing with here, where Congress intended to expedite the ability of the government to collect taxpayer money and make that as efficient as possible. So the fact that it's helping the government, that's enough to give the congressional intent. It is. And it's also as the ---- Well, I understand your argument. I'm not sure I agree. Maybe we go to number two, where you really had your argument focused and I took you off. Sure. And two has three sub-steps. If an amendment will impair the rights of a party when that person acted or increase that party's liability or impose new duties on that party, then that's an impermissible retroactive effect and it won't be applied retroactively. Now, here, two and three, I don't think there's any legitimate argument that the amendment here increased anybody's liability or added anybody's duties or obligations. One, were a party's rights impacted when they acted when this amendment was passed? To impair the rights a party possessed when he acted. Correct. There, there's at least room for argument. We don't believe that an inability to sue is the impairment of rights that the Land Graft Court had in mind, and this Court agrees with that. But is it more than just an inability to sue? That sounds procedural, as I understand it, assuming the facts in the light most favorable to the plaintiff here. He actually had a meritorious claim under the old version, and now under the new version of the statute, he doesn't. Well, we would dispute the fact that it's a meritorious claim. Assuming the facts. Well, it's at least a claim that can be brought and won't be dismissed on summary judgment. We think it should have been dismissed on summary judgment, even if it's not held retroactive. But as this Court held in the Southwest decision, the expectation of success in litigation is not the kind of right that the Land Graft Court had in mind when it announced its standard. That was the FOIA case, right? That was the FOIA case, and so was the biodiversity case. But it's been extended beyond the FOIA context. We have the Hasbro case, the Federal Privacy Act, the Energy Policy Act as well out of this Court. So, in fact, what you're arguing to me is the fact that this amendment extinguishes a cause of action that had accrued to this potential plaintiff is not enough to meet, impair the rights a party possessed when he acted. That's correct. So what would be enough? Adding my cause of action. It's still a question, but it was a great one. And there are examples. If, for example, the amendment had increased the length of the statute of limitations to create liability, to create a cause of action where one previously had not existed, there we would have an example. Or if it went the other way, that this had been permissible and then was the amendment made the call impermissible. In other words, if you flipped the amendment. In that case, then it would have been an impermissible retroactive effect, because it would have created liability. And here, it's also important. I guess I'm having a tough time why this is any different than the example you gave me about the statute of limitations. If the statute of limitations elongates the amount of time allotted to bring the claim, why does not eliminating the claim altogether also mean the same impairs the rights of a party possessed? Because it's the difference between creating liability and limiting liability. And there are cases, in fact, that the appellant cites. The Beaver and Booz cases deal with situations where this Court found that eliminating a liability would not be a permissible retroactive impact and would not apply the statute retroactively. But interestingly, Poehlin cited the Two Rivers case and did not cite the Fink case, which came out of this Court the same year, dealing with the same statutory amendment, Amendment to 1983, that altered the tolling provision. In the Two Rivers case, the Court applied and had this manifest injustice standard, which was added to the Landgraft analysis, found that in the Two Rivers case, because the plaintiff would have been given two years to file but didn't, there was a manifest injustice in applying the statute retroactively, actively. But in the Fink case, the plaintiff had only been given three months, therefore, it would have been manifestly unjust to apply the statute retroactively. And under that standard, we don't have a manifest injustice when a cause of action is eliminated in furtherance of congressional intent, not just to promote the United States' interests, but also to promote consumer interests, because there's an interest in consumers being able to contact their government student lending agencies in order to get the assistance that they need with those payments. The order should be affirmed. Thank you. Kagan. Mr. Locher. Locher, thank you. I actually have nothing further unless there are any specific questions. I do. I am interested in your response to the argument that we just heard, that when we add or when the legislation would add or increase liability, then that would affect rights, but when it diminishes or restricts or eliminates potential liability, that doesn't affect rights. What's the response to that? I think with this particular amendment, by taking away Mr. Silver's right to file a lawsuit, that would be an impermissible retroactive effect. And I cited the four Ninth Circuit cases earlier with Scott, he caught a booze, Two Rivers, Tlahee, as well as Beavers. And so in January 2013, as well, sorry, 2014, when Mr. Silver revoked consent and received calls, the law at the time that was in effect rendered those calls without prior express consent to be illegal. But it isn't a matter of timing, as some of these other examples have been. It's a matter of congressional determination that something that previously was considered improper is no longer considered improper. And why isn't that the kind of judgment that back casts also by saying, you know, we made a mistake by saying that this was improper activity. And we recognize that there are really good policy reasons for not making that activity improper. Why isn't that the sort of judgment that ought to have retroactive effect? Well, what's different here is if you look at the August 2016 FCC report and order, there is still a carve out for revoking consent. It's in paragraph 38 of that order. But consent is irrelevant under the new statute as to this call. Correct. If it were made today, there'd be nothing wrong. Thea does not need prior express consent to place a call using an ATDS or pre-recorded message. So could you engage with my question about why that isn't the, where Congress has said, you know, we made something improper, but really that was, we now think that was a mistake. That that activity should be okay. It's not a matter of timing. It's a matter of a substantive determination by Congress that the activity should be permitted. And I guess I have a hard time seeing why that sort of judgment shouldn't be given retroactive effect. Because I don't think that's the end of the analysis. Congress asked the FCC in conjunction with the Department of Treasury to figure out how to implement this new TCPA amendment. In so doing, the FCC issued that August 2016 order saying that consumers can still tell the caller to stop calling them. So Congress didn't take, it's no longer, it's not now legal for the government entity to continue to call, even though there's a revocation of consent or a statement to stop calling. That's still illegal under paragraph 38 from the 2016, the August 2016 FCC order. So really, if I understand your response to me, it is that retroactivity doesn't even matter. Because under the current version of the statute, this still would have been improper. That's how I read the current version. Why are we having the whole conversation about retroactivity if that's the case? Because that was the basis of the granting of the dismissal. So if you look at the law that was in effect prior to the amendment, you have revocation. The law that will be implemented, and I don't think it's been implemented yet, because in the final paragraph of the August 2016 FCC order, it says that the TCPA amendment will go into effect six days after filing the Federal Register. I haven't seen that filing yet, as of last night. So I don't believe the TCPA amendment is in effect. But the focus of my intended conversation today was retroactivity, because that was the grounds of granting the motion for summary judgment. Thank you. Any other questions? Thank you. Thank you. The case just argued is submitted, and once again, we appreciate the helpful arguments from both of you, yeah.
judges: Graber, N.R. Smith, Simon